STATE  
*v.*  
JUDGE 9TH DIS.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

THE STATE *v.* GUILLERMO BALLERIO.

| 11 81 |
| 45 1043 |

Where a bill of exceptions, taken to the refusal of a judge to grant a continuance in a criminal case, shows that there were matters of fact known to the judge, which, though they do not appear, may have had an important bearing on the decision of the question of continuance, the Supreme Court will not interfere.

The accidental omission of some names from the jury-list will not furnish a sufficient ground for challenging the array; to make a perfect list would be impracticable, and to construe the law so as to require it, would operate an indefinite suspension of the trial by jury.

A party under indictment has not the right to move for attachments against absent persons, whose names are found on the jury-list, in order to bring into court a greater number of jurors, when there are enough in attendance to complete the panel.

It is good cause of challenge in capital cases that a juror has conscientious scruples against finding an unqualified verdict of "guilty."

In determining the guilt or innocence of a party indicted, the jury are the judges of the law as well as of the facts; but not in exactly the same sense. Under our statute, they are the exclusive judges of the facts; they are, subordinately, judg·s of the law, because the statute proceeds upon the assumption that they are not familiarly conversant with it, and therefore requires the presiding judge to "give them a knowledge of the law applicable to the case." They have power to decide against the judge's opinion of the law—nay, they have power to pervert or ignore the law itself by their decision, and no penalty awaits them. But, as they cannot trample on the law without spurning the obligation of their oaths, so they cannot in general overrule the authoritative exposition of the law given by the judge, without endangering the cause of justice, and forgetting the theory upon which its administration is based. That theory is, that the complicated duties of a criminal trial should be so parcelled out amongst various officers as to give to no one man or set of men unqualified and arbitrary control over the life and liberty of the citizen and the welfare of the State. After hearing the arguments of both sides, the judge, unbiasssd by interest or passion, is expected to declare the law; the jury to apply it to the facts which they find. They may safely take the law from the judge, for, if he misstates it to the prejudice of the prisoner, the latter is not without remedy: his exceptions may be heard in another tribunal, after the excitement of the hour is past. But the error of the jury is subject to no such revision.

The following charge to the jury was asked and refused:

"In all criminal cases the jury are the judges of the law as well as the facts. The province of the judge is to explain the law, and they are bound to listen to and weigh such explanation with due care and attention, although not bound to admit it as conclusive of the law, should they differ in opinion from the judge." *By* MERRICK, C. J., *dissenting:* I think the instructions should have been given the jury as prayed for.

APPEAL from the Fifth District Court of New Orleans, *Robertson*, J.

*Morse*, Attorney General, for the State. *G. & C. E. Smidt*, for appellant.

SPOFFORD, J. *Guillermo Ballerio* has appealed from a judgment of the First District Court of New Orleans, by which he was sentenced to seven years' imprisonment in the Penitentiary, for the crime of manslaughter.

I. If we concede that there may be cases where this court has power to review the exercise of the discretion vested in the District Judges upon the subject of continuances in criminal cases, still the appellant has not presented a fit case for relief.

The bill of exceptions and the affidavit do not disclose the exercise of any diligence on the part of the prisoner. It is not shown that the absent witness was ever recognized to appear or even summoned, although he had been present on other occasions. But the bill of exceptions does show that there were

11

matters of fact known to the District Judge, which do not fully appear before us, and into the truth or falsity of which we could not enquire, if they did, but which may have had an important bearing upon the decision of the question of continuance. It is therefore unnecessary for us to express an opinion whether the doctrine in the case of *The State* v. *Hunt*, 4 An., 438, was laid down too broadly or not.

II. The second bill of exceptions is also untenable. It was taken to the opinion of the Judge overruling a challenge to the array. It does not show affirmatively that the Sheriff failed to make out, in December, 1854, a list of all persons, in the parish of Orleans, subject to jury duty, and if it did, the accidental omission of some names would not furnish a sufficient ground for challenging the array. To make a perfect list would be impracticable, and to construe the law so as to require it, would operate an indefinite suspension of the trial by jury.

III. We have not been referred to any law authorizing a party under indictment, to move for attachments against absent persons whose names are found upon the jury list, in order to bring into court a greater number of jurors when there are enough in attendance to complete the panel.

In the absence of a legislative enactment upon the subject, we think this matter is left exclusively to the discretion of the District Judges, and with the exercise of that discretion, we will not interfere upon grounds like those suggested in the third bill of exceptions.

IV. The next bill of exception was taken to the ruling of the Judge, who held it to be good cause for challenge to a juror by the State, that he had conscientious scruples against finding an unqualified verdict of "guilty" in capital cases. In the recent case of *The State* v. *Melvin*, we expressed our unanimous concurrence in the correctness of a similar ruling, and we see no reason to change our opinion.

V. Lastly, the prisoner's counsel excepted to the refusal of the Judge to give the jury the following instructions: "That in all criminal cases the jury are the judges of the law as well as the facts. The province of the Judge is to explain the law, and they are bound to listen to and weigh such explanation with due care and attention, although not bound to admit it as conclusive of the law should they differ in opinion from the Judge."

As the prisoner took no exception to any portion of the Judge's charge, we are bound to presume that it embodied a correct exposition of the law applicable to the case. So the question is, whether, after a sound and strictly legal charge, the court so far erred in refusing to add the above instructions as to authorize us to set aside the verdict. We think not.

There is undoubtedly an admixture of truth in the instructions asked and refused. But they were so framed that, without further qualification, they would have been likely to leave an erroneous impression upon the minds of jurors.

In determining the guilt or innocence of a party indicted, the jury are the judges of the law as well as of the facts; but not in exactly the same sense. Under our statute, they are the exclusive judges of the facts; they are, subordinately, judges of the law, because the statute proceeds upon the assumption that they are not familiarly conversant with it, and therefore requires the presiding Judge to "give them a knowledge of the law applicable to the case." They have power to decide against the Judge's opinion of the law; nay, they

have power to pervert or ignore the law itself by their decision, and no penalty awaits them. But, as they cannot trample on the law without spurning the obligation of their oaths, so they cannot in general overrule the authoritative exposition of the law given by the Judge without endangering the cause of justice and forgetting the theory upon which its administration is based. That theory is, that the complicated duties of a criminal trial should be so parcelled out amongst various officers as to give to no one man or set of men unqualified and arbitrary control over the life and liberty of the citizens, and the welfare of the State.

After hearing the argument of both sides, the Judge, unbiassed by interest or passion, is expected to declare the law; the jury to apply it to the facts which they find. They may safely take the law from the Judge, for if he misstates it, to the prejudice of the prisoner, the latter is not without remedy; his exceptions may be heard in another tribunal, after the excitement of the hour is past. But the error of the jury is subject to no such revision.

The reason why we set aside verdicts for an erroneous charge of the Judge is, that the law presumes the charge to have exercised a controlling influence upon the minds of jurors.

It is ordered that the judgment appealed from be affirmed, with costs.

MERRICK, C. J., dissenting. I think the instructions should have been given the jury, as prayed for. It is in accordance with the common law, as I think it has been understood in this State, and also in harmony with the practice in civil cases. C. P., 520; 12 R. R., 165.

Experienced counsel are often unwilling to prejudice their cause in the minds of the jury by a seeming admission that the charge of the Judge is against the accused, even where they think he is in some respects in error. I think, therefore, the accused is entitled to the instructions asked, without excepting to the charge in other particulars, and that the case ought to be remanded for a new trial.